Mr. Gilbert. Thank you your honor and may it please the court. I'm Joseph Gilbert and I represent Robert Stencil in this matter. Mr. Stencil is asking this court to do two things. First he's asking that you remand for a new trial so that he could be his trial would be severed from his court should not have denied his many requests to sever and he suffered prejudice when Duke's antagonistic defense required the jury to disbelieve the core of Stencil's defense in order to believe the other. The totality of evidence including irrelevant improper and unfair piling on of evidence by Duke made the jury unjustifiably infer that the conflict between Duke and Stencil alone demonstrated that they were both guilty. Second Mr. Stencil asks you to remand the case in the alternative for a new sentencing hearing and that the court go back for a new sentencing hearing without consideration of the vulnerable victim enhancement. The evidence in this case and in the record include a testimony by seven investors and the record also includes victim impact statements. The district court at sentencing failed to identify even one investor as an unusually vulnerable victim in this case. The government basically needs this court to misapply Shepard to establish a new rule that repeat investments by anyone somehow. So let me let me let me ask at least something that I think jumps out at the beginning. So you're asking for severance and severance is generally based when you have antagonistic defenses and it's required when the co-defendants present defenses that are in stark contrast and so as I understand it uh Stencil says Nayato was legitimate and Duke says he believes it was legitimate. Where is the conflict? Well if I may I would like to explain what I believe the record demonstrates are the core of the two defenses. Duke's court core defense is that he was also a victim of Stencil that he unwittingly passed on false information from Stencil. Stencil's defense was that in fact Nayato was based on a legitimate business idea that Mr. Stencil worked feverishly to obtain working capital and the problems resulted after Duke and his partner co-called Mr. Stencil when they became aware of the fact that he was converting vehicles to run on this alternative energy. So so they're basically just blaming each other and isn't mere finger pointing that's not enough to establish an antagonistic defense is it? I mean even in the way you just described it they're blaming each other. Your honor I agree mere finger pointing is not enough to show this but in this case it was more than just mere finger pointing. This was not a case like I think it was the the Leidy case where you had two people each saying that they that they were not participants in a kidnap and murder scheme and that's where the court said mere finger pointing is is not enough to show it. But in this case it was more than just mere finger pointing. In this case essentially Duke became a second prosecutor and helped the government pile on even more evidence and and saying basically it was actually all Stencil it was his fault I was a victim as well and and Stencil in fact basically maintained that this this would have worked his business idea would have worked had he been able to raise the full four million dollars in capital and that when Duke and his colleague Mr. Van Name came into the picture and convinced him they were experts on fundraisers and raising capital that in effect that's when it it moved over into the areas that drew the government's attention. So I think when you look at the totality of the evidence in this case there was way more than just mere finger pointing. Duke basically by his presence allowed him improper testimony to come in. Duke argued in the form of questions and made commentary under the guise of cross-examination of witnesses and questioning his own five witnesses including himself. In fact in this case 50 percent of the trial transcript more than 50 percent of the trial transcript is taken up by Duke and Duke made very clear from the very beginning of the trial and his was definitely going to try to demonstrate and lay all the blame at Stencil's feet. He also piled on inculpatory evidence that the prosecutor never raised. In fact Duke called witnesses that the government could have called but didn't call. Duke called Kathy Hanley who was listed as being on the board of directors as the chief operating officer. He called Ben Rainwater who was the president of the company that Mr. Stencil was trying to get to distribute the products. He also called himself and he testified your honor for three almost three full days. The last three full days of this trial was the jury hearing over and over and over again things that they had already heard and some things that they had not heard before. So you have that you have the prejudice aspect of it and I suppose that's where you're going with this is you've got the limiting instruction from the judge and then you got all this evidence that you know of separate and apart from what Duke does is evidence that supports these convictions. So how do you overcome the prejudice problem there? If we think that that the evidence brought in by the prosecution independent of the evidence from Duke is sufficient. Well your honor that's certainly the government's argument and they're briefs and if this court does find that in fact when you say when you say it's the government's argument I want to make sure you I think it's probably we all accept that if the evidence independent is sufficient then you prejudice is not shown but you're saying the government's argument is it wasn't sufficient. Is that what you're saying? You're not disagreeing with the fact of what are you disagreeing with on and what I'm saying? Your honor we're disagreeing with the whole notion that the government created in this case. Their whole argument at trial and now is that this was a sham from the very beginning and that Leslie created this and I'm Mr. Stencil goes by the name Leslie. Let me ask you differently was the evidence is does the record show that the evidence independent of that submitted by Duke was sufficient to convict your client? Mr. Stencil maintains that it was not your honor that in fact had the trial proceeded without Duke that the jury would have in fact found that Stencil had a legitimate business that he. So what is the standard there? What is the standard? We said jury would in fact you're saying no reasonable jury would have found him guilty without that testimony? Yes your honor. Is that the standard? I'm just asking. I'm just asking for your take on it. I believe the standard is that no reasonable I cannot say the jury might not have found him. I cannot say the jury probably would have found him but Stencil's position must be. I don't want to get lost in terms of words and semantics here. Are you saying you cannot say that no reasonable jury could could not have found him guilty? No your honor. I'm saying that that's not the law. I'm not arguing that because that would not be the law. I'm saying that Mr. Stencil's burden is to show that no reasonable jury would have convicted him and that is his position. If I may your honor I'd like to turn to the second issue. The court should remand for sentencing without a victim vulnerable victim enhancement because again there was literally no evidence that any of the investors were unusually vulnerable in this case. At sentencing the district court failed to identify even one investor as an unusually vulnerable victim. The government tried to rely upon Shepard but I believe that the government is misapplying Shepard. Shepard does not stand for the proposition that virtually every time any investors repeat investments that that demonstrates unusual vulnerability and the investors in this case were quite different from those in Shepard. As this court knows quite well Shepard was a well in Shepard. Didn't the district court justify the vulnerable victim enhancement by saying that it was based on quote the nature of how this fraud activity worked? Wasn't that the reason the district court gave for applying the enhancement in Shepard? Yes your honor and that's one of the reasons why I maintain that the Shepard court should not have affirmed the vulnerable victim enhancement but that wasn't enough. Okay but the Shepard court did so you what so where do we go? I don't want to interrupt you your honor but basically basically what we have is in Shepard the majority opinion and the law in this circuit now under Shepard stands for this proposition that every single time investors reinvest does not automatically mean that the vulnerable victim enhancement applies. Okay so you so you agreed with me that in Shepard we held that that the vulnerable victim enhancement based on the nature of how this fraud activity worked was sufficient and that that's what happened in Shepard and that's fourth circuit precedent. So do you expect as a panel us to overrule fourth circuit precedent? Is that what you're asking us to do? No your honor you don't have to because remember remember I believe it was in note three of Shepard the majority indicated that in fact they're not saying that it automatically applies in every case and so if you distinguish this case from Shepard how would we distinguish this how would we distinguish this case from Shepard? Well you could distinguish this case from Shepard first of all because of the type of a case. Shepard looked to a number of different cases from different circuits and found that five of those cases were sweepstakes cases. They also looked at a movie production case and they asked evangelicals to donate money to supposedly get back assets that have been frozen from Ferdinand Marcos and also a commodity investment scheme. But Shepard the people who would have invested in Shepard were clearly unusually vulnerable. People who would fall for a sweepstakes scam and immediately send money as soon as they're told on the first call you're a winner you won the prize all you've got to do is give us a little bit of money to make sure that we cover the costs and pay the IRS taxes etc. Those type of folks are clearly the type of people who are much more susceptible to to frauds. So as a as a as a did reloading occur in this fraud in this case? Your honor if you define reloading which I believe the government and I'm not going to quibble about this if you define reloading as people investing more than once. We had one investor who had built his own business in HVAC invested seven times. He testified at trial nothing that he testified demonstrated he didn't understand what was happening. How would you define reloading if it's not in the way that the government and we and Shepard define it? How would you define it then? I'll accept that definition your honor. I'm sorry I don't mean to quibble over that but Mr. Gunder testified at trial that he understood the pluses and minuses of investment. He he did invest seven times. There was also another investor who testified Mr. Grassbetter who invested two times and then there was one investor who Miss Green I believe who stopped he she started to invest a second time but then she got a call from Inspector Heath. That's how this whole thing started and he told her hey I think this is a any different from people in the general population. All of them responded because these folks that were calling were calling from a list of people who were supposedly sophisticated investors under the term as defined by the SEC. They were different from people in the general public because they'd already been identified as easy marks. They'd already given once before so that's how you distinguish them from other people. That's why it's a reloading fraud. Well I respectfully suggest your honor that if if when you take these particular investors and the facts of this case if this court finds that the mere fact that three of them invested more than once that that makes them unusually vulnerable then you're going right down the line that the government's asking you to do and they're asking you to change Shepard to suggest that any time the government can successfully prosecute any investment endeavor that in fact if they succeed in getting a conviction then automatically the vulnerable enhancement is going to apply and Shepard specifically didn't go that far. The government is asking you to modify Shepard to make it so that there will always be a vulnerable victim enhancement any time the government successfully prosecutes a fraud and the and at least one person invests more than once without any question about why that person might have invested more than once without any do you do you agree that our standard of review is clear error for whether the victims were vulnerable? I apologize your honor I don't I don't. Well look it up when you come back on rebuttal and let us know if you agree with that standard that our standard would be clear error as to whether the victim. I think that the the standard for is reasonableness of the sentence and it's an abuse of discretion I don't think it's clear error I believe it's an abuse of discretion. Well I'm speaking specifically on whether the victims were vulnerable here that determination what is the standard review for determining whether these victims were vulnerable just just peruse let me know what your thoughts on it. I see that I'm out of time I think I can answer that now if that's all right your honor. Certainly. And my answer is the reason why I sort of stumbled there is that there was no finding in this case I didn't have to try to decide if there if it was a clear you know a clear error for the judge because the judge simply made no findings at all in this case about any victim being vulnerable in the I don't want to go on I can come back for rebuttal on that since I have answered that question I hope your honor. Okay I'd like to start where my opponent left off and explain for judgment that the standard is clear error this court reviews the factual findings the district court makes that sentencing for clear error. I'd also like to clear up that the government is not asking the court to expand Sheppard we're asking this court to apply Sheppard to the facts of this case. I want to don't leave the don't leave the clear error thing I he says there's no finding by the court that they were victims here so didn't have to address it is that correct? I don't think that's correct your honor the district court's finding here was like the district court in Sheppard first but certainly sufficient for this court to do an appellate review to determine whether it was clear error from the district court to apply the antecedent here. The court started the sentencing hearing by telling the successful that he was familiar with the event's conduct having sat through the trial so he's familiar with the witness testimony. Can you change your position or something your voice is sort of kind of streaking off or breaking at least from my perspective I think it's the way either you're speaking directly into it or something like that I don't know. Can you hear me now sir? I can. Okay should I start over again is there something you missed? No no no no I picked up on it it just it felt like it was kind of breaking a bit. I apologize it's Steve Jobs fault. So as the as I was saying the district court here started out the sentencing hearing by letting Mr. Stensel knew that he was familiar with the offense conduct because he had sat through trial and heard the witness testimony adopted the PSR in full which laid out the reloading speed and maybe he's finding that these victims were vulnerable and that Mr. Stensel knew or should have known that they were vulnerable because of the relief in support of applying the enhancement discuss the reloading scheme. So we're not asking this court to go beyond Shepard we're asking this court to apply Shepard and I will take note that the lottery scheme in Shepard is actually quite similar to the scheme here. I know my opposing counsel described these investors as sophisticated investors and that is a term that's used in the SEC but I wouldn't characterize them as savvy. These are people who responded with a cold call from somebody who gave them a name that was an alias that they couldn't look up who told them that they were not calling from an investment bank or a financial institution but that these people had the opportunity to make five to eight dollars on a 50 cent investment provided they acted right now within the next 60 or 90 days because there was going to be an IPO and then send the materials from their personal email address as ending in Yahoo or Gmail. So I would take issue that these are sophisticated these are people who fell victim to this scheme much like the lottery scheme in Shepard. You've got a limited time you've been picked out you have a neat opportunity just you need to act now and after they did Fentzel and his co-conspirators targeted them repeatedly for reinvestment and so we're not saying that every single victim who responded to this scheme is a vulnerable victim but certainly those who were reloaded multiple times the unlike Shepard where there was no information in the record I believe of particular victims here we had seven victims testify we also had report 67 sorry exhibit 67 that the government introduced into evidence the expert report which identified every investment and commission payment during the course of the conspiracy which shows that of the opposing counsel said that at least a few of the victims who testified said that they knew what they were doing and they were sophisticated and and I guess the implication being they are not vulnerable then what is the government's response to that your honor I don't think the victims who testified said that they were sophisticated they said that they had invested before but they also testified that this was a hard sell that every time someone called them there was a lot of pressure you have now time is of the essence and so I think it's very similar to the lottery scheme right it's a unique opportunity you have to send this money you have to do it now so certainly these were people who were being sophisticated or accredited debt investors because they had a certain amount of money and a certain amount of income but I don't think having a healthy bank account is a job if you were new from a high-level investment scheme what we have here I think you go your voice is going in and out I think maybe just because you're not close enough maybe to the mic or something but I can hear you it's just sort of hard okay how am I doing now you're doing good now better fine thank you would you like me to repeat anything no I heard you it just was difficult at times okay I will try to project my voice into the ladder if that would help as well okay okay so again we're not asking this court to expand shepherd we're simply asking this asking this court to apply shepherd to the facts of this case and I'm certainly happy to talk about the severance issue if any of the judges on our panel have questions about that if there are no further questions from the panel we would ask this court to affirm mr stencil's conviction and let me ask one question not to prolong this but tell me the individual that you contend that stencil knowingly and deliberately reloaded on sure well of the 140 some total victims I counted through government and I found about 53 who were reloaded 13 of them were reloaded three or more times one as many as 18 and we had co-conspirators testify that in three or four instances stencil actually reached out to investors who had already invested and then talked to them to get them to invest again or to invest more money and we also have testimony from the co-conspirators and the victims that signed the stock certificates to the victims so he was well aware that they were being reloaded he held conference calls and produced press releases so that the co-conspirators could go back to the victims and provide the new and exciting information that was necessary for them to reinvest so I don't think there's any question that there was sufficient evidence in the record here that stencil knew or they should have known that these victims were being reloaded signed every stock certificate. Thank you. So if there are no further questions we would ask this court to affirm stencil's conviction and sentence. Thank you. Thank you. Mr. Gilbert. Thank you your honor. I'd like to first address that what the district court did when it came to making the decision about the vulnerable victim enhancement. The district court did not identify a single vulnerable victim. The district court did not make any assessments whether stencil knew or should have known of such unusual vulnerability and I'd like to quote from the record for you the totality of what the court said about this. At page 3928 of the record the district court said quote there was ample evidence to show they were vulnerable victims end quote and then the court made no findings of fact before concluding that stencil should have known or knew of the of victims vulnerability. The court said quote with this reloading scheme that went on the defendant should have if not known should have known of the vulnerability of these victims. This record does not explain which victims were targeted multiple times. The government exhibit 67 that the that was that explained in Sheppard. I'm sorry sir. Was it explained in Sheppard? Is the record reflected? I mean the court pretty much said there with when it says there's no clear error in the district court's determination that some victims were particularly vulnerable and that Sheppard was aware of this vulnerability. Well what you just read is what happened in Sheppard. It does your honor and you probably won't surprise you that I agree with the dissent in Sheppard. However I think that uh Sheppard again. It does surprise me because if you agree with the dissent that you you you also agree we can't do anything with the majority. No but I think that you can distinguish this case from that and I think that the distinction in this case is again because of the fact that this was not a sweepstakes scam. The people in Sheppard and as as Sheppard itself explained as as far as that that one case goes Sheppard said in this particular case it's clear that these folks were unusually vulnerable. They were gullible. They were the type of people who would respond to an initial call asking for money about this and would believe this fanciful notion that they had won this investment scheme and most of the cases that were discussed in Sheppard by the majority were all primarily sweepstakes scams. So I I am asking this court to distinguish Sheppard. If I can just wrap up I would like to say the government is asking you to find that every victim is unusually vulnerable if you look at the facts of this case and that would establish new law and so with that said your honor I would ask you to grant the relief we requested in our brief. Thank you. All right Mr. Gilbert thank you very much. The court would like to commend both counsel for their excellent presentations today and particularly Mr. Gilbert would like to note the fact that in your capacity as court-appointed counsel you serve you have served a very valuable role in in helping the court understand the case and do the work so we particularly appreciate your assistance. My pleasure your honor. Thank you but want to commend both counsel on their Oh no. I just want to say to the to the to the lawyers that for Judge Keenan to have said that is quite a statement those were her last words that she will say in this court as an active judge and for you to receive that from her as one of the most distinguished jurors I've ever seen on this court any court is quite a statement so I hope you cherish that statement whether no matter how this court goes I hope you cherish that statement on your performance today. Thank you your honor and it's always been a pleasure being involved with all the judges and especially you Judge Keenan so thank you very much. And I also want to add that on the occasion of Judge Keenan's last sitting at least in active as an active judge it's been one of the great honors of my life to serve with Judge Keenan on the court and more importantly to call her a friend. Oh you guys are too much if I don't quit now I'm gonna start crying but I appreciate so much my colleagues are the absolute best and and they're they're kind they're diligent they're incredibly smart and hard-working so I've been the person honored to work with them and thank you so much we'll adjourn court at this time. Dishonorable court stands adjourned until this afternoon. God save the United States in this honorable court.
judges: Barbara Milano Keenan, James A. Wynn Jr., Stephanie D. Thacker